IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**GUIDEONE INSURANCE COMPANY**                          **PLAINTIFF**

**VERSUS**                        **CIVIL ACTION NO. 2:06cv229KS-MTP**

**JOHN BRIDGES AND PERRY SMITH**                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Partial Summary Judgment **[#96]** filed on behalf of defendant Perry Smith. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

### FACTUAL BACKGROUND

In February of 2006, John Bridges ("Bridges") lived in a house located on Highway 598 in Seminary, Covington County, Mississippi. He had insurance coverage on his home and automobiles with Allstate. Near the renewal time for coverage, Bridges called Perry Smith ("Smith"), a GuideOne Insurance Company agent, about changing his coverage from Allstate to GuideOne. Bridges told Smith that he had purchased the house for $25,000 in 2004, that he had it insured with Allstate for $45,000 with contents coverage of $30,000, and liability of $100,000. He stated that

the square footage was approximately 1,000 square feet, and that he had a $7,000 claim for damage done by Hurricane Katrina.

On February 24, 2006, Smith prepared a quote for coverage under a GHO-3 policy for Bridges' house with the value of $45,000, other structures valued at $4,500, personal property valued at $33,750, and loss of use and medical payments.  After taking certain deductions for protective devices (smoke alarm, fire extinguisher, dead bolt, auto discount, and higher deductible), the premium came to $756.

On March 2, 2006, Perry Smith went to John Bridges' house to have him sign the application.  Under GuideOne's underwriting guidelines, Smith was supposed to do an inspection of the premises prior to binding coverage.  The company's underwriting guidelines state:

> All property must be inspected by the agent prior to binding and submitting the application. If the inspection indicates that there are unrepaired or unrepairable damage, other hazards or the property does not meet the underwriting guidelines, then *DO NOT* bind coverage.

GuideOne Mississippi Homeowners General Eligibility Underwriting Guidelines.

Smith allegedly did not conduct such an inspection.  According to him, GuideOne never instructed him on how to conduct an inspection.  GuideOne never gave him a manual or any guidelines that informed him of the proper way to conduct an inspection as required under its underwriting guidelines.

Smith has stated that he did not enter the home to verify the form of heating, whether all the doors had deadbolts on them, or whether Bridges had smoke detectors and a fire extinguisher in his home, all of which affected the insurability or the rating of the policy.  Smith does not remember whether he walked around the perimeter of the

house or whether he saw the open and raised foundation, which under the GuideOne underwriting criteria would have precluded coverage. Bridges testified that Smith came in his house, sat and visited for a while, walked around the home, took a photo of Bridges' home, then re-entered the house, at which time Bridges handed him the signed application and the check for the premium. Later that day, Perry Smith submitted Bridges' application and bound coverage effective March 2, 2006.

On the morning of May 18, 2006, while Bridges was running errands in Seminary, his home caught fire and was rendered a total loss. Thereafter, Bridges filed a claim in the form of a Sworn Statement and Proof of Loss with the plaintiff for damage to his home and contents. After investigating the claim, on September 26, 2006, the plaintiff denied Bridges' claim stating: (1) Bridges made material misrepresentations in his application for insurance; (2) Bridges committed civil arson; and (3) Bridges made other misrepresentations in his application for insurance that were not material, but caused the plaintiff to award Bridges discounted premiums that he did not deserve.

On October 10, 2006, the plaintiff filed a Complaint for Declaratory Judgment against Bridges seeking judgment that Bridges' policy was void because he made misrepresentations in his application which were material to the plaintiff accepting it; or, in the alternative, that the incident would not be covered due to the intentional and/or criminal acts of Bridges, which were clearly excluded under the policy; or, in the further alternative, for reimbursement from Bridges for policy discounts he received based on other misrepresentations made in his application for insurance.

On March 2, 2007, Bridges filed his Answer and Affirmative Defenses to the Complaint filed against him by the plaintiff. Bridges contemporaneously filed a

Counterclaim for Bad Faith against GuideOne for bad faith refusal to pay his claim for the fire loss. On October 15, 2007, the plaintiff filed its First Supplemental and Amending Complaint for Declaratory Judgment which joined Perry Smith, a career agent of the plaintiff. The Supplemental Complaint alleged the following:

> In the alternative, should it be found that John Bridges did not commit civil arson and is not responsible for the material misrepresentations in his application for insurance, GuideOne avers that, upon information and belief, the negligence and/or intentionally fraudulent acts of Perry Smith caused a policy to be issued to John Bridges where no policy would have been issued had the truth of all conditions of the residence been known, and as a result, Perry Smith is responsible to GuideOne for contractual indemnity due to his own negligence in this matter.

Claiming that the actions of the plaintiff in the handling and denial of Bridges' fire loss claim are what generated Bridges' counterclaim for bad faith, Smith has moved for partial summary judgment on the issue of extra-contractual damages.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the

evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material." *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The

movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## ANALYSIS

The plaintiff denied Bridges' fire loss claim alleging that he made material misrepresentations in his application for insurance and that he intentionally set the fire. It is unrefuted that the authority and decision to deny a claim is held by the plaintiff's claims processing department.  Perry Smith was merely an agent who solicited and enrolled customers for the plaintiff.  Perry Smith had no involvement in the decision to deny Bridges' claim or rescind Bridges' policy, and the plaintiff has admitted as much. During the deposition of Kathleen Alverio, one of the plaintiff's designated Rule 30(b)(6) deponents, Ms. Alverio testified that Perry Smith played no part in the process or the decision to rescind Bridges' policy or deny Bridges' claim.

Indeed, in the plaintiff's response to the present motion, GuideOne admits: "To the extent that punitive damages could be assessed based upon the claims-handling process, GuideOne agrees with Perry Smith that those damages could not be assessed to Perry Smith because he had no involvement in the claims-handling process." However, GuideOne goes on to make the argument that "to the extent that punitive damages could be assessed to GuideOne based upon Perry Smith's actions in enrolling John Bridges for insurance, then Perry Smith would be responsible for same."

The Career Agent Contract entered into between GuideOne and Perry Smith outlines what contractual obligations Perry Smith has to the plaintiff.  The

-7-

Indemnification Clause of the Career Agent Contract states the "[a]gent shall indemnify and hold Company harmless against any claim or liability based on error by Agent." The Indemnification Clause of the Career Agent Contract does not state that agent Perry Smith will indemnify the plaintiff for its own negligence, and, as stated, GuideOne agrees.

## **CONCLUSION**

After a review of the counterclaim filed by Bridges against GuideOne and the relevant indemnity language in the agent contract between Smith and GuideOne, the court concludes that even if GuideOne is correct in its assertion that Perry Smith should not have bound coverage, an assertion which is denied by Perry Smith, this would only potentially entitle GuideOne to indemnity for actual losses paid under the underlying homeowner's policy not for the extra-contractual damages asserted in Bridges' counterclaim against GuideOne. The claims asserted by Bridges in his counterclaim against the plaintiff relate only to GuideOne's alleged tortious denial of Bridges' claim. Any error made by Smith would have occurred in the application process not during the claims handling process. Thus, Smith can only be liable for indemnity for any errors he made in the original application process. Bridges' extra-contractual damage claims only go to the claims handling and denial process. Perry Smith is, therefore, entitled to partial summary judgment on the issue of indemnity to GuideOne on any of Bridges's extra-contractual damage claims.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial Summary Judgment **[#96]** filed on behalf of defendant Perry Smith is granted and that

GuideOne's claim of indemnity as to extra-contractual damages against Perry Smith is dismissed with prejudice. A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 121th day of September, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE