**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**GUIDEONE INSURANCE COMPANY**                                           **PLAINTIFF**

**VERSUS**                                            **CIVIL ACTION NO. 2:06cv229KS-MTP**

**JOHN BRIDGES AND PERRY SMITH**                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment **[#98]** filed on behalf of plaintiff GuideOne, and on a Motion for Summary Judgment **[#99]** filed on behalf of defendant John Bridges.  The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that neither of the motions is well taken and that both should be deneid.  The court specifically finds as follows:

**FACTUAL BACKGROUND**

In February of 2006, John Bridges ("Bridges") lived in a house located on Highway 598 in Seminary, Covington County, Mississippi.  He had insurance coverage on his home and automobiles with Allstate.  Near the renewal time for coverage, Bridges called Perry Smith ("Smith"), a GuideOne Insurance Company agent, about changing his coverage from Allstate to GuideOne.  Bridges told Smith that he had purchased the house for $25,000 in 2004, that he had it insured with Allstate for $45,000 with contents coverage of $30,000, and liability of $100,000.  He stated that

the square footage was approximately 1,000 square feet, and that he had a $7,000 claim for damage done by Hurricane Katrina.

On February 24, 2006, Smith prepared a quote for coverage under a GHO-3 policy for Bridges' house with the value of $45,000, other structures valued at $4,500, personal property valued at $33,750, and loss of use and medical payments. After taking certain deductions for protective devices (smoke alarm, fire extinguisher, dead bolt, auto discount, and higher deductible), the annual premium came to $756.00.

A GHO-3 policy is not the premier policy issued by GuideOne. A PACER policy is the best GuideOne policy available and provides the most comprehensive coverage and guaranteed replacement costs on the home and contents. After the first conversation, Smith calculated replacement cost of Bridges' home and determined the value of the house to be $71,993. This made Bridges' home eligible for PACER coverage, the best GuideOne policy. PACER coverage is only available on homes worth $65,000 or greater. According to Bridges, until Smith calculated the value of Bridges' home by replacement cost, he did not think Bridges' home was eligible for PACER coverage.

In their first conversation, Smith apparently anticipated issuing the GHO-3 policy to Bridges. They spoke again on March 1, 2006, this time with Smith apparently anticipating issuing a PACER policy. Bridges did not know the difference between the two policies nor did Smith inform him of different requirements relating to the home. But significant differences exist between the two policies. For example, apparently GuideOne will insure homes under GHO-3 coverage with space heaters. For PACER coverage, the home must have heat provided by a central unit controlled by a

thermostat and the home must not have an open foundation. Smith allegedly asked Bridges a series of questions over the telephone and Smith filled out the computerized application form.

On March 2, 2006, Perry Smith went to John Bridges' house to have him sign the application. Under GuideOne's underwriting guidelines, Smith was supposed to do an inspection of the premises prior to binding coverage. The company's underwriting guidelines state:

> All property must be inspected by the agent prior to binding and submitting the application. If the inspection indicates that there are unrepaired or unrepairable damage, other hazards or the property does not meet the underwriting guidelines, then *DO NOT* bind coverage.

GuideOne Mississippi Homeowners General Eligibility Underwriting Guidelines.

Smith allegedly did not conduct such an inspection. According to him, GuideOne never instructed him on how to conduct an inspection. GuideOne never gave him a manual or any guidelines that informed him of the proper way to conduct an inspection as required under its underwriting guidelines.

Smith has stated that he did not enter the home to verify the form of heating, whether all the doors had deadbolts on them, or whether Bridges had smoke detectors and a fire extinguisher in his home, all of which affected the insurability or the rating of the policy. Smith does not remember whether he walked around the perimeter of the house or whether he saw the open and raised foundation, which under the GuideOne underwriting criteria would have allegedly precluded coverage. Bridges testified that Smith came in his house, sat and visited for a while, walked around the home, took a photo of Bridges' home, then re-entered the house, at which time Bridges handed him

-3-

the signed application and the check for the premium.  Later that day, Perry Smith submitted Bridges' application and bound coverage effective March 2, 2006.

On the morning of May 18, 2006, while Bridges was running errands in Seminary, his home caught fire and was rendered a total loss.  Thereafter, Bridges filed a claim in the form of a Sworn Statement and Proof of Loss with the plaintiff for damage to his home and contents.  After investigating the claim, on September 26, 2006, the plaintiff denied Bridges' claim stating: (1) Bridges made material misrepresentations in his application for insurance; (2) Bridges committed civil arson; and (3) Bridges made other misrepresentations in his application for insurance that were not material, but caused the plaintiff to award Bridges discounted premiums that he did not deserve.  While conducting its investigation, GuideOne also learned that a mortgage exists on the property in the amount of $25,000.00 in the name of Vicky Gershon, Bridges' former wife, which Bridges failed to disclose when applying for insurance.  Bridges stated that he was never asked if the house had a mortgage on it.

GuideOne has moved for summary judgment as a matter of law due to the alleged material misrepresentations contained in Bridges' policy application, which the plaintiff asserts serve to void Bridges' insurance policy, and thus, entitle GuideOne to declaratory judgment that Bridges' policy is void and subject to recision.  The specific material misrepresentations alleged by GuideOne are that Bridges said the heat for his house was provided by a central unit controlled by a thermostat when in fact it was heated by space heaters and that Bridges said the foundation of his house was slab when it "sat on blocks."

In the alternative, GuideOne moves for summary judgment due to alleged

material misrepresentations that caused a "Pacer" policy to be issued, when one should not have been.  In the further alternative, GuideOne moves for partial summary judgment on the issue of bad faith, contending that it can show that it had legitimate and arguable reasons for denying this claim.

Bridges responds with his own summary judgment motion asserting that he answered every question Smith asked him and let Smith have free reign to inspect the house when he brought the application to Bridges for his signature.  He also argues that the house was eligible for insurance coverage under a GHO-3 policy through GuideOne even without central heat.  Bridges' also asserts that Smith is the one who elected to state on the application that the house sat on a "slab," even though it was clear that it did not.

Further, Bridges claims that GuideOne has recognized that Bridges did not in fact make any material misrepresentations due to the fact that GuideOne has filed a counter-claim against its agent, Perry Smith, asserting either his negligence or intentional fraud which caused GuideOne to issue the original policy.  Bridges goes on to assert that the plaintiff did not even discuss the application nor its claim of material misrepresentation with Perry Smith prior to filing this action against Bridges and that such is additional evidence of bad faith in the claims handling process.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material

fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.

1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## MATERIAL MISREPRESENTATION

Under well settled Mississippi law, if an applicant for an insurance policy makes a material misrepresentation in his application, a right to rescind arises in the insurer. *Fidelity Mut. Life Ins. Co. v. Miazza*, 93 Miss. 18, 46 So. 817 (1908).  Of course, the misrepresentations must affect either the acceptance of the risk or the hazard assumed by the company.  Miss. Code Ann. § 83-9-11(3) (1972).  However, under Mississippi law, if the applicant divulges the information, but the agent who fills out the form does not record the information accurately, there has been no misrepresentation.  *Mattox v. Western Fidelity Ins. Co.*, 694 F.Supp. 210, 215 (N.D.Miss. 1988)(citing, *World Insurance Co. v. Bethea*, 230 Miss. 765, 93 So.2d 624 (1957)).  An insurance company "cannot avoid the policy because the application for insurance does not fully disclose information given to its agents."  *National Life and Acc. Ins. Co. v. Miller*, 484 So.2d

329, 334 (Miss. 1985).

GuideOne makes much of the fact that Bridges signed the application and admitted that he was given a chance to review it, even though he didn't take advantage of the opportunity. However, the signing of a completed application does not alter the fact that the insured has communicated the information to the agent. *Home Insurance Co. v. Thornhill*, 165 Miss. 787, 144 So. 861 (1932). "Absent some proof of collusion between the applicant and the agent, [which has been alluded to in this case but no proof offered], the information relayed to the agent is imputed to the company and the company cannot then rescind the policy because it was not told what its agent was told." *Mattox v. Western Fidelity Ins. Co.*, 694 F.Supp. at 215. *See also, Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 767 (Miss. 1985). Further,

> Although this court has held that there is no duty on the insurer to investigate an applicant upon receipt of the application, *Ross v. Western Fidelity Insurance Co.*, No. EC87-54-S-O (N.D. Miss. June 29, 1988) (unpublished opinion), that does not mean that the company may, in good faith, wait until a claim is filed and then determine that the claimant was not an insurable risk and avoid the policy. Uninsurability alone is not grounds for rescission of the policy. The company that refuses to investigate until after a claim is filed runs the risk that it has insured someone whom it otherwise would not have. It is indeed true that the company has the right to rely on the information supplied in the application in determining whether or not to accept the risk, *Apperson v. United States Fidelity & Guaranty Co.*, 318 F.2d 438, 441 (5th Cir. 1963). However, . . . [a]n applicant has neither concealed nor misrepresented information when he has answered fully and truthfully all the questions asked of him. *Liverpool & London & Globe Insurance Co. v. Delaney*, 190 Miss. 404, 200 So. 440 (1941).

*Mattox v. Western Fidelity Ins. Co.*, 694 F.Supp at 216-17.

The court concludes, after reviewing all of the evidence submitted that there are genuine issues of material fact as to whether Bridges made any misrepresentations to GuideOne, let alone whether those alleged misrepresentations were material to the

-9-

acceptance of or to the risk assumed.  This is amplified by the fact that GuideOne has chosen to add Perry Smith as a defendant.  What Smith did in the application process in procuring the policy and his obligations to GuideOne and to Bridges becomes paramount in any decision regarding misrepresentations.  A well-informed trier of fact, guided by instructions on Mississippi law, will have to make those determinations.  For the same reason, and for the additional reasons set forth hereinafter in regard to the arson claim, summary judgment on whether GuideOne had a legitimate and arguable reason to take the actions it took will also be left to the jury.

## **ARSON**

Bridges moves for summary judgment in his favor on GuideOne's contention that he committed arson that caused the destruction of his home.  The evidence of arson in this case is weak at best.  GuideOne bases its conclusion of arson on several circumstantial occurrences.  Among those are the fact that Bridges gave somewhat contradictory and time-conflicted statements to Carey Smith, the plaintiff's adjuster on the day of the fire and months later to its attorney in his statement under oath.

However, a review of the statements of Bridges reveals that while there are minor differences in how long he was gone and how long it took him to run his errands in Seminary on the morning of the fire, he has consistently stated where he was and what time he returned.  No one has placed him at or near the scene at the time of the start of the fire.  He arrived to find the fire department battling the blaze and his home almost totally destroyed.

GuideOne's causation expert, Gary Jones, stated in his original opinion that the

origin of the fire was "undetermined." He did conclude, based upon Bridges' statement, that a scented candle was left burning by a window in the bedroom and likely was the origin of the fire. His report stated that "human intervention" was involved as well. Bridges argues that he meant "human intervention" in the sense that someone had to light the candle.

GuideOne, not content with the simple conclusion of "undetermined" origin conducted a telephone conference with the expert Jones to supply "additional information." The phone conference included senior personnel at GuideOne and its attorney, Larry Canada. Apparently, information regarding the supposed inconsistent statements of Bridges and other information from Bridges' statement under oath were provided to Jones. Based on this oral communication, Jones allegedly concluded that the fire was caused by the arson of Bridges. However, Jones' report was never amended nor updated to reflect this change in opinion and is subject to a separate motion to strike.

An insurer must prove arson by clear and convincing evidence. *McGory v. Allstate Insurance Company*, 527 So2d. 632 (Miss. 1988). If it relies on circumstantial evidence, it must establish three elements: (1) an incendiary fire; (2) motive of the insured to destroy the property; and (3) evidence that the insured has the opportunity to set the fire or to procure its being set by another. *Id.* at 636.

GuideOne's proof of willful incendiary origin, motive and opportunity falls woefully short of clear and convincing evidence of civil arson at this point in the proceedings. As stated, it seems to be generally accepted that the candle likely started the fire. However there is slim proof that Bridges' intentionally contributed to the start. The

nebulous conclusions of GuideOne's expert Jones do little to convince the court of Bridges' complicity in the origin of the blaze.

Likewise, the evidence of motive appears to be thin. The evidence of the undisclosed mortgage to his former wife and some poor credit do little to support a conclusion of arson. As Bridges' counsel points out, he was largely "judgment proof." Bridges is on total Social Security disability, which is exempt from execution. As well, he enjoys certain exemptions related to his homestead. There is no proof of any active collection activity on any delinquent credit accounts nor any proof of serious financial difficulty faced by Bridges. And even GuideOne's expert Jones stated that the dwelling did not appear other than a normally occupied home.

As far as opportunity, the court has already pointed out that this evidence is very thin and contradictory mainly in the conclusions of GuideOne. The court cannot conclude that GuideOne has shown that there are no material issues for trial on the subject of arson. In the same vein, GuideOne has argued enough to avoid summary judgment in favor of Bridges on this issue. Resolution of this question will be left to the jury. After a thorough review of the evidence presented, the court concludes that both motions for summary judgment should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#98]** filed on behalf of GuideOne and the Motion for Summary Judgment **[#99]** filed on behalf of defendant John Bridges are both denied.

SO ORDERED AND ADJUDGED, this the 16th day of September, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE