**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**GUIDEONE INSURANCE COMPANY**                                **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 2:06cv229KS-MTP**

**JOHN BRIDGES AND PERRY SMITH**                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion to Strike Expert Testimony **[#100]** filed on behalf of the plaintiff, GuideOne Insurance Company. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken should be denied. The court specifically finds as follows:

**FACTUAL BACKGROUND**

The court has set forth the facts surrounding the genesis of this litigation in other orders and opinions previously entered herein and will repeat only those necessary for a clear understanding relative to this motion. On the morning of May 18, 2006, while John Bridges was running errands in Seminary, his home caught fire and was rendered a total loss. Apparently, a scented candle left burning was the origin of the fire. Bridges was insured by the plaintiff, GuideOne.

Thereafter, Bridges filed a claim in the form of a Sworn Statement and Proof of Loss with the plaintiff for damage to his home and contents. After investigating the

claim, on September 26, 2006, the plaintiff denied Bridges' claim stating: (1) Bridges made material misrepresentations in his application for insurance; (2) Bridges committed civil arson; and (3) Bridges made other misrepresentations in his application for insurance that were not material, but caused the plaintiff to award Bridges discounted premiums that he did not deserve.

On October 10, 2006, GuideOne filed a Complaint for Declaratory Judgment against Bridges alleging that he made material misrepresentations concerning his home during the application process and requesting the court to enter a declaratory judgment that GuideOne had properly rescinded the policy and refused to pay the claim. Of importance for this Motion though, GuideOne accused Bridges of intentionally setting the fire to his home. Bridges answered and filed a Counterclaim against GuideOne for bad faith in its denial of his claim and in the adjustment process, and sought actual and punitive damages.

Bridges designated Consulting Engineer Eric M. Benstock of McDowell Owens Engineering, Inc. as an expert fire witness. Mr. Benstock submitted an expert report, dated September 25, 2007, regarding the cause of the fire that gave rise to Bridges' claim, and in the report, Benstock concluded that the fire was accidental.

On August 7, 2008, counsel for GuideOne deposed Benstock. In his deposition, Benstock listed the four classifications of causes of a fire as natural, unintentional or accidental, incendiary, and undetermined. Benstock stated that he applied the National Fire Protection Association ("NFPA")'s NFPA 921 "Guide for Fire and Explosion Investigations" guidelines to reach his conclusion regarding the cause of the fire. Benstock stated that he ruled out natural causes because the weather was good on the

day of the fire and that he applied the NFPA 921 guidelines regarding incendiary fires, which require intent to be "proven to an acceptable level of certainty" before a fire is to be classified as incendiary. Benstock also stated that he would not personally classify a fire as incendiary unless he was absolutely positive that the fire was incendiary. It is this conclusion which has caused GuideOne to file the present motion to strike his testimony asserting that he did not employ valid reasoning or reliable rationale in reaching his opinion.

## **ADMISSIBILITY OF EXPERT TESTIMONY**

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> A primary requisite of the rule is that the evidence or testimony "assist the trier of

-3-

fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's

> general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171.  Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Kumho*, 119 S. Ct. at 1176.  In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." 119 S. Ct. at 1177.

This court has been instructed by *Kumho* interpreting *Daubert* that the opinions stated by Benstock are not the object of the relevancy and reliability determination but instead the court is required to determine the reliability of his basis for arriving at those conclusions. 119 S.Ct. at 1177.  The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a determination of the issue before this court.  Therein lies the flexibility of the gatekeeping responsibility as mandated by the Supreme Court.  As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility.  *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997).  In this age of "post-*Daubert*"

sensibility, especially as enlightened by the United States Supreme Court's pronouncement in *Kumho*, the trial courts were instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp*. 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007)(*quoting Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

## **ANALYSIS**

GuideOne contends that Benstock's deposition statement that he would not classify any fire as incendiary unless he was absolutely certain demonstrates that he is applying a different standard in reaching his conclusions than is set out in the NFPA 921 guidelines which is "higher than that set forth in the NFPA 921 guidelines, and moreover, it is a standard that is so difficult to meet as to render it meaningless." While not frivolous, GuideOne's argument is certainly disingenuous.

The NFPA guidelines classify the causes of fires as accidental, natural, incendiary, or undetermined. Section 19.2.1.3 discusses incendiary fires. It states:

> The incendiary fire is one intentionally ignited under circumstances in which the person knows that the fire should not be ignited. When the intent of the person's action cannot be determined or proven to an acceptable level of certainty, the correct classification is undetermined.

Benstock points out in his affidavit that for an investigator to classify a fire as incendiary, he is required to reach a level of certainty with which he is comfortable. The term "certainty" is not defined in the NFPA. Section 18.6 states, "When forming an opinion from hypotheses about fires or explosions, the investigator should set standards for the level of certainty in those opinions." Bridges argues that Benstock did

exactly that. His affidavit includes definitions for certainty of "indisputable," "doubtless," and "positive." Clearly, Benstock has adequately explained his reliance on the NFPA in reaching his conclusions and has explained his methodology to support those conclusions.

GuideOne seems to certainly have a problem with Benstock's opinion - more his conclusion than his methodology. That is fine and is a matter of cross-examination - not exclusion. The court has previously concluded that GuideOne's motion is not frivolous, however, it left the train only one stop before frivolity.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Strike Expert Testimony **[#100]** filed on behalf of plaintiff GuideOne is denied.

SO ORDERED AND ADJUDGED, this the 23rd day of September, 2008.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE